WO

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John Richard Bicket,<br><br>    Plaintiff,<br><br>vs.<br><br>American General Life Insurance Company,<br><br>    Defendant. | No. CV-07-855-PHX-FJM<br><br>**ORDER** |

This is an action by John Richard Bicket against American General Life Insurance Company ("American General") alleging anticipatory breach of contract. We now have before us plaintiff's motion for summary judgment (doc. 26), defendant's response (doc. 33), and plaintiff's reply and statement of facts in support of reply (docs. 35 & 36). Also before the court is defendant's motion for summary judgment and separate statement of facts (docs. 27 & 28), plaintiff's response (doc. 32), and defendant's reply (doc. 37).

I

Plaintiff began working as an insurance sales associate for defendant's predecessor in interest in 1970. In 1991, plaintiff was promoted to regional manager for the Golden Southwest Region and relocated to Phoenix, Arizona. Plaintiff and American General executed a retirement agreement in January 1998. DSOF, Ex. B  The retirement agreement contains a formula for benefits based, in part, on a percentage of plaintiff's average production during the three years before his retirement. Id. ¶ 1. Benefits are

payable for either a ten or fifteen-year period at the plaintiff's election. Id. ¶ 2. Plaintiff is required to "maintain an active agency contract with [American General] and to actively represent [American General] exclusively for the sale of life insurance and financial services products during the retirement benefit payment period." Id. ¶ 11.

In 2001, plaintiff's sales decreased and he was placed on probation. On October 26, 2001, plaintiff contacted his direct supervisor, Darrell Malano, to discuss the possibility of retirement. On November 1, 2001, plaintiff faxed Mr. Malano and Mr. Ridlehuber, Mr. Malano's supervisor, a letter containing a proposal for his retirement. Plaintiff requested, among other things, that his three-year production average be calculated using the sales figure from 2000 instead of the formula specified in the retirement agreement. DSOF, Ex. E Under the plaintiff's proposal, he would receive $65,970 per year for ten years or $52,875 per year for fifteen years. Id. The plaintiff never received a written response to his proposal.

On November 6, 2001, the plaintiff sent an email and fax to Mr. Malano and Mr. Ridlehuber regarding an alleged oral agreement that he and Mr. Malano reached the day before. The email claims that Mr. Malano agreed to the increase in plaintiff's benefits and that the plaintiff elected a ten-year payout. Neither Mr. Malano nor Mr. Ridlehuber responded to this email. No contract modifying the retirement agreement was written or signed by the defendant.

Plaintiff provided Mr. Malano with written notice of his retirement on November 13, 2001, and his retirement became effective on December 31, 2001. Mr. Bicket began receiving retirement benefits in the amount of $57,571 per year in January 2002. Plaintiff's benefits were consistent with a ten-year benefit period under the original terms of the retirement agreement. Mr. Bicket received and cashed these payments without any written objection for nearly two years.

1    In September 2003, Mr. Bicket sent a letter to defendant challenging the amount of
2    his retirement benefits. Ross Friend, counsel for American General, responded by letter
3    on October 3, 2003:

> Since you elected on your own to begin receiving the benefits of the retirement agreement offered to only a very few select managers and you were also relieved of any responsibility for debts at that time, the Company declines to revisit these issues. (Note you elected the 15 year option which results in a smaller number than if you were paid over 10 years, thus, your current payment has been accurately calculated.).

8    DSOF, Ex. J

9    Plaintiff acknowledges that he knew Mr. Friend's statement that he had elected a
10   fifteen-year benefit period was incorrect. Mr. Bicket decided, however, to accept
11   payments of $57,571 per year for fifteen years rather than his original proposal for
12   increased benefits. Plaintiff's lawyer sent a letter to Mr. Friend on November 17, 2003
13   stating, "[a]lthough Mr. Bicket did elect the 10 year retirement annuity, (see attachment
14   A), he understands the retirement agreement as it exists today: $57,570.96 per year over a
15   15 year period currently being paid at $4797.58 monthly on or before the first of the
16   month." DSOF, Ex. K  American General never addressed this portion of plaintiff's
17   November 2003 letter.

18   Parties did not exchange any further communication regarding the amount of Mr.
19   Bicket's retirement benefits until 2006. On August 8, 2006, American General informed
20   plaintiff that his retirement benefits would expire in 5 years. In response, plaintiff
21   initiated this action for anticipatory breach of the retirement agreement. Plaintiff now
22   moves for summary judgment and seeks a declaration that American General is required
23   to pay him either: (1) $65,970 per year until December 31 2011 plus past economic

damages; or (2) $57,571 per year through December 31, 2016.[1] Defendant cross-moves for summary judgment asserting the statute of frauds and unilateral mistake.

## II

The first issue is whether the retirement agreement was modified in 2001 before plaintiff's retirement. Plaintiff contends that his affidavit, unilateral email to Mr. Malano and Mr. Ridlehuber, and the statement of his wife are sufficient to show that the retirement agreement had been modified in 2001. We disagree.

The statute of frauds requires that "an agreement which is not to be performed within one year from the making thereof" be "in writing and signed by the party to be charged." A.R.S. § 44-101(5). Any modification to a contract governed by the statute of frauds must also be in writing to be enforceable. Weldon v. Greer, 29 Ariz. 383, 388, 241 P. 957, 959 (1926). The parties do not dispute that the retirement agreement cannot be performed within one year and is subject to the statute of frauds. As a result, only a written modification to the retirement agreement is enforceable.

Plaintiff argues that the alleged oral modification is enforceable because he fully performed his obligations under the oral contract. Full performance and part performance of a contract are exceptions to the statute of frauds. Wilson v. Metheny, 72 Ariz. 339, 342, 236 P.2d 34, 37 (1951) ("It is the law in this state that either part or full performance of an oral contract takes it out of the statute of frauds."). We conclude, however, that neither exception applies here.

According to the plaintiff, his only duties under the alleged oral modification were to: (1) provide written notification of his decision before November 15, 2001; and (2) notify associates of his retirement. Plaintiff's Response at 9. An orally modified contract is treated as containing the terms of the original contract as modified. Restatement

---

[1] Plaintiff also requests on the first page of the complaint that the defendant be ordered to pay him benefits of $52,875 per year for the period December 31, 2001 through December 31, 2006. Amended Complaint, at 1. This request is not raised by the plaintiff in other documents.

- 4 -

1  (Second) of Contracts § 149(1) (1981) ("For the purpose of determining whether the
2  Statute of Frauds applies to a contract modifying but not rescinding a prior contract, the
3  second contract is treated as containing the originally agreed terms as modified.").
4  Plaintiff could only have fully performed if he fulfilled all of the requirements of the
5  retirement agreement as modified.

6      Plaintiff cannot fully perform his obligations under the entire retirement
7  agreement until his benefits expire. The retirement agreement requires the plaintiff to
8  "maintain an active agency contract with [American General] . . . during the retirement
9  benefit payment period." DSOF, Ex. B ¶ 11. Because plaintiff is still receiving benefits,
10 he has a continuing responsibility to maintain a relationship with American General.
11 Plaintiff's actions announcing his decision to retire did not fulfill his continuing
12 obligations under a modified retirement agreement. The plaintiff has not fully performed
13 his duty to maintain an agency contract with American General, and the full performance
14 exception does not apply.

15     The part performance exception is also inapplicable to the facts. "[T]he acts of
16 part performance take an alleged contract outside the statute only if they cannot be
17 explained in the absence of the contract." Owens v. M.E. Schepp Ltd. P'ship, 218 Ariz.
18 222, 182 P.3d 664, 668 (2008). An alleged act of part performance must be consistent
19 "only with the existence of a contract and inconsistent with other explanations." Id.

20     Plaintiff's decision to announce his retirement in November 2001 is consistent
21 with several explanations other than the existence of an oral modification to the
22 retirement agreement. For example, Mr. Bicket may have chosen to retire because he
23 feared termination after being placed on probation. Defendant's Reply at 8-9. Plaintiff's
24 decision to retire is not "unequivocally referable" to the alleged oral modification.
25 Owens, 218 Ariz. 222, 182 P.3d at 668. As a result, the part performance exception does
26 not apply.
27
28

The undisputed facts show that defendant never executed a written modification to the retirement agreement. Because no exception applies, the statute of frauds bars enforcement of an alleged oral modification.

### III

The remaining issue is whether the retirement agreement was modified by Mr. Friend's October 2003 letter. We conclude that it was not. First, the letter clearly states that the defendant does not intended to modify the retirement agreement. DSOF, Ex. J ("Since you elected on your own to begin receiving the benefits of the retirement agreement . . . the Company declines to revisit these issues").

Second, Mr. Friend's letter is not a sufficient writing under the statute of frauds. A modification to the retirement agreement must fully satisfy the statute of frauds to be enforceable. Weldon, 29 Ariz. at 388, 241 P. at 959. An enforceable writing "must contain the terms and conditions of all the promises constituting the contract and by whom and to whom the promises are made." Register v. Coleman, 130 Ariz. 9, 12, 633 P.2d 418, 421 (1981).

Mr. Friend's October 3, 2003 letter does not "contain the terms and conditions of all the promises constituting the contract." Id. The letter does not contain either the total or annual amount of benefits to be paid. The letter also does not describe the frequency with which payments will be made. Plaintiff points only to the statement that "[plaintiff] elected the 15 year option which results in a smaller number than if [plaintiff] were paid over 10" as evidence that the original retirement agreement had been modified. Id. Reading Mr. Friend's statement in context, a reasonable fact finder could not conclude that this was intended to act as an agreement between the parties. Plaintiff's letter in response, unilateral and unsigned by the defendant, does not transform the defendant's October 2003 letter into a valid contractual modification.

Because Mr. Friend's letter is insufficient as a written document under the statute of frauds and does not modify the retirement agreement, we do not reach the issue of unilateral mistake.

## IV

Accordingly, **IT IS ORDERED DENYING** plaintiff's motion for summary judgment (doc. 26), and **GRANTING** defendant's motion for summary judgment (doc. 27).

DATED this 17th day of September, 2008.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge